## Carabetta Builders, Inc. *v.* Hotz Corporation
## Hotz Corporation *v.* Carabetta Builders, Inc.
### (11163)

Daly, Lavery and Freedman, Js.

Argued December 10, 1992—decision released January 26, 1993

*Dominic J. Aprile,* with whom was *Thomas E. Katon,* for the appellant (plaintiff in the first case, defendant in the second case).

*Thomas G. Librizzi,* with whom was *Linda J. Cannata,* for the appellee (defendant in the first case, plaintiff in the second case).

Freedman, J. Carabetta Builders, Inc. (Carabetta), appeals from the trial court's granting of Hotz Corporation's (Hotz) application to confirm an arbitration award and from the trial court's denial of Carabetta's

application to vacate, correct or modify the arbitration award. Carabetta presents a plethora of issues to this court, but when these issues are properly scrutinized, they come down to the following: Did the trial court improperly (1) find that the arbitration proceedings were governed by the Connecticut law of arbitration rather than the federal arbitration law and (2) confirm the arbitration award rather than vacating, correcting or modifying it? We affirm the judgment of the trial court.

The following facts are relevant to this appeal. On November 10, 1988, Hotz and Carabetta, both Connecticut corporations, entered into a written subcontract that called for Hotz to fabricate and supply structural steel and other components to Carabetta, the general contractor for the construction of a high-rise condominium building in Asbury Park, New Jersey.

Article 13 of the subcontract, entitled "arbitration," states in pertinent part that "[a]ll claims, disputes, and other matters in question arising out of, or relating to, this Subcontract, or the breach thereof, shall be decided by arbitration . . . ." Article 15.2 (5), contained in schedule A of the subcontract, further provides that "[a]ny dispute arising under this agreement shall be submitted (by action of either or both parties) to arbitration under the rules of the American Arbitration Association. If the parties fail to agree upon the selection of a single arbitrator, then the selection of a single arbitrator will be made as promptly as possible by the American Arbitration Association in accordance with its procedures for such selection. The arbitration proceeding shall take place in Meriden, CT. The determination by the arbitration shall be [final] and binding on the parties and may be enforced by any court of competent jurisdiction. The arbitration proceeding shall be in accordance with Connecticut law."

A dispute arose between the parties regarding the performance of the subcontract during the course of its performance. On March 20, 1990, Hotz filed a demand for arbitration with the American Arbitration Association, in which Hotz sought "[a] determination of all sums due Hotz, including, but not limited to, past due progress payments, subcontract balance due, compensation for extra and additional work, interest, losses incurred as a result of Carabetta's failure to pay Hotz and loss of use of money on the aforedescribed sums, as well as reimbursement of its attorneys' fees and costs of this arbitration." Thereafter, Carabetta filed an answer and counterclaim. Carabetta denied all of Hotz' claims and sought damages from Hotz for a number of alleged breaches of the subcontract by Hotz.

Hotz and Carabetta agreed on an arbitrator and after a lengthy hearing the arbitrator awarded to Hotz the sum of $2,470,701 on May 30, 1991, which included interest through June 1, 1991. The arbitrator denied Carabetta's counterclaim against Hotz. It is from this decision that Hotz filed its application to confirm the award and Carabetta filed its application to vacate, correct or modify the award.

Carabetta argues that the trial court in deciding this matter should have applied the Federal Arbitration Act (FAA), 9 U.S.C.A. § 1 et seq., rather than General Statutes §§ 52-417 through 52-419, inclusive. We disagree.

The language of the subcontract is clear and unambiguous. When that is so, "the contract is to be given effect according to its terms." *Barnard* v. *Barnard,* 214 Conn. 99, 110, 570 A.2d 690 (1990); *Thompson & Peck, Inc.* v. *Harbor Marine Contracting Corporation,* 203 Conn. 123, 131, 523 A.2d 1266 (1987). The words "[t]he arbitration proceeding shall be in accordance with Connecticut law" contained in the subcontract leave no doubt that the parties intended that the appli-

cable sections of the General Statutes should govern the arbitration proceedings, including §§ 52-417 to 52-419 which govern judicial review of arbitration awards.

In *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior University,* 489 U.S. 468, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989), the United States Supreme Court held that the FAA did not preempt state law where the arbitration agreement provided that state law would govern, even though the contract involved interstate commerce. "Arbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate . . . so too may they specify by contract the rules under which that arbitration will be conducted." (Citation omitted.) Id., 479. Carabetta argues, however, that because the subcontract with Hotz was executed before the Supreme Court's decision in *Volt,* the parties could not have known that the FAA would not govern and therefore they could not have intended that state law would govern. This circuitous argument is without merit. Among other of its flaws, it overlooks the fact that the contract in *Volt,* which the court held demonstrated the intent of the parties to have state law govern the arbitration proceeding, was quite obviously also executed before the *Volt* decision.

Turning now to the question of whether the trial court properly approved the arbitration award rather than vacating, correcting or modifying it, we conclude that it did. "The authority of an arbitrator to adjudicate the controversy is limited only if the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review." *Garrity* v. *McCaskey,* 223 Conn. 1, 5, 612 A.2d 742 (1992). Here, the language

of article 13 of the subcontract contains no qualifying language. "In the absence of any such qualifications, an agreement is unrestricted." Id. Consequently, the award in this case arose out of an unrestricted submission. "When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission." Id., 4. "Even in the case of an unrestricted submission, we have, however, recognized three grounds for vacating an award: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . or (3) the award contravenes one or more of the statutory proscriptions of § 52-418."[1] (Citations omitted.) Id., 6. In *Garrity* v. *McCaskey,* supra, 6–11, our Supreme Court recently clarified that a "manifest disregard of the law," which Carabetta contends undermines the integrity of the present award, is part and parcel of the statutory ground for vacating an award where "the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." General Statutes § 52-418 (a) (4).

Here, the trial court properly reviewed the integrity of the arbitration process and award by considering the relevant statutory criteria. As the trial court aptly noted: "Carabetta has not pointed to any improper conduct by the arbitrator. Instead, Carabetta's allegations

---

[1] General Statutes § 52-418 (a) provides in pertinent part: "Upon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

in its application focus on the weight of the evidence presented to the arbitrator, which is not a proper subject of review on an unrestricted submission." Accordingly, the trial court correctly confirmed the arbitration award and correctly denied the application to vacate, correct or modify the award.

The judgment is affirmed.

In this opinion the other judges concurred.